**Kincaid WILSON, Appellant,**

v.

**STATE OF NORTH CAROLINA, D. P. Henry, Administrator, Appellee.**

**No. 13339.**

United States Court of Appeals, Fourth Circuit.

Submitted June 2, 1970.

Decided July 15, 1970.

---

1. Now 18 U.S.C., § 3731 paragraph 4.

2. See Friedenthal, Government Appeals in Criminal Cases, 12 Stan.L.Rev. 71 (1959).

Kincaid Wilson, pro se.

Jacob L. Safron, Staff Atty., Raleigh, N. C., for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges, sitting en banc.

PER CURIAM:

This application for a certificate of probable cause to appeal from an order of the District Court dismissing a petition for a writ of habeas corpus calls for our reconsideration of the kind of problem with which we dealt in Alford v. North Carolina, 4 Cir., 405 F.2d 340, in light of the Supreme Court's recent decisions in Brady v. United States, 397 U. S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785.

On July 29, 1963 Wilson was arrested on a warrant charging him with the offenses of rape and first degree burglary.[1]  Under North Carolina law

both offenses are capital.  After a preliminary hearing Wilson was bound over for action of the grand jury, which returned indictments charging both offenses.  On August 7, 1963 Wilson was arraigned and pled not guilty through his appointed attorney.  On August 12 he entered pleas of guilty to both charges and received a sentence of life imprisonment as provided by the appropriate North Carolina statutes.[2]

In 1965 Wilson filed an application for a postconviction hearing in the state trial court, asserting, among other grounds, that his conviction and sentence were invalid because he was ineffectively represented by counsel and because his pleas of guilty were not voluntarily entered.  After a hearing the state court found that he had entered his pleas voluntarily, intelligently and with understanding of their effect on the advice of competent counsel.  For reasons to be stated below, we feel that those findings are supported by the record of the proceedings and warrant the denial of relief.

We find it necessary to discuss only one of Wilson's contentions—that his pleas of guilty were the product of a statutory scheme which "needlessly encouraged" pleas of guilty by providing for the possible imposition of a death sentence after a jury trial on a capital charge but limiting the punishment for the same offense to life imprisonment when a conviction is obtained on a plea of guilty.  Such coercion, he asserts, rendered his pleas involuntary.[3]

This case is governed by the recent decisions of the United States Supreme

---

1. A second life sentence, imposed in connection with another charge of first degree burglary, has been held invalid by a state court and is not relevant here.

2. The statute authorizing guilty pleas to capital charges, N.C.Gen.Stat. § 15-162.1 (1965), has since been repealed, c. 117, N.C. Session Laws of 1969.

3. One of Wilson's remaining contentions—that he was not afforded counsel at a line-up in which he was identified as the perpetrator of the rape—was not discussed in the District Court's opinion. However, Wilson is entitled to no relief on this claim since United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which furnishes the decisional basis for this contention, has no retroactive effect. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Wilson's remaining claims, largely technical, are all without merit and are adequately treated in the District Court's opinion.

Court in Brady v. United States, *supra*, and Parker v. North Carolina, *supra*. Both *Brady* and *Parker* involved the question of the validity of pleas of guilty entered to capital offenses under circumstances in which the plea guaranteed that the accused would escape the possible imposition of a sentence of death. The issue presented, as stated by the Court in *Brady,* is whether

> "it violates the Fifth Amendment to influence or encourage a guilty plea by opportunity or promise of leniency and [whether] a guilty plea is coerced and invalid if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof." Brady v. United States, *supra*, 397 U.S. at 750–751, 90 S.Ct. at 1470.

In *Brady* the defendant, after first having pled not guilty and demanded a jury trial on a charge of kidnapping in violation of 18 U.S.C. § 1201(a),[4] changed his plea to guilty after learning that a codefendant would testify against him. After a hearing on a subsequent motion to vacate sentence filed pursuant to 28 U.S.C. § 2255, it was determined that Brady's plea of guilty, as a matter of fact, was not motivated by the sentencing discrimination set out by the statute. In *Parker* no findings of fact with respect to the motivating influence of the similar North Carolina statute on the defendant's plea of guilty were ever made. Parker was charged with first degree burglary, a capital offense in North Carolina. Under the provisions of N.C.Gen.Stat. § 15–162.1, the same statute as is involved in the present case, Parker received a sentence of life imprisonment on his plea of guilty. At a state postconviction hear-

ing it was found that his plea of guilty was made voluntarily and understandingly. This finding, however, was not made in consideration of the possible effect of the sentencing statute; that issue was raised for the first time on appeal in the Court of Appeals of North Carolina. The Court of Appeals decided that issue on the merits adversely to Parker, holding that he was entitled to no relief as a matter of law, and that the statute in question was constitutional and could not exert any unlawfully coercive force. The Supreme Court in *Parker,* without definitely deciding the matter, proceeded on the assumption that under United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, the capital penalty provisions of the North Carolina statute were unconstitutional in their allowance of the imposition of the death penalty only after a jury trial on a plea of not guilty. Parker v. North Carolina, *supra*, 397 U.S. at 794–95, 90 S.Ct. at 1458.

■ In both *Brady* and *Parker* the Supreme Court denied relief, holding that "an otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial." Parker v. North Carolina, *supra*, 397 U.S. at 795, 90 S.Ct. at 1461. In so holding the Court rejected the contention that the decision in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), which held invalid capital punishment provisions in a statute under which that penalty could be imposed only in the event of a jury trial, also could operate to render involuntary a plea of guilty entered under such a statute.[5] Where a defendant charged under such a statute, with

---

4. The death penalty provision of this statute was held unconstitutional in United States v. Jackson, 390 U.S. 570, 88 S. Ct. 1209, 20 L.Ed.2d 138 (1968).

5. "*Jackson* prohibits the imposition of the death penalty under § 1201(a), but that decision neither fashioned a new standard

for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both 'voluntary' and 'intelligent.'" Brady v. United States, *supra*, 397 U.S. at 747, 90 S.Ct. at 1468.

adequate understanding of the charge and the nature and effect of a plea of guilty, without impermissible promises or threats having been made, and with the capacity to "rationally weigh the advantages of going to trial against the advantages of pleading guilty," determines after competent advice of counsel to enter a plea of guilty, his plea is not subject to a subsequent attack on the basis of the motivations that may have been supplied by the statutory penalty scheme.[6]

With these considerations in mind, we turn to the facts of the present case. Wilson was charged with the capital offenses of rape and first degree burglary. He had been identified by the prosecutrix as her attacker. An experienced attorney was appointed to represent him prior to his arraignment on August 7, 1963. During the next five days the attorney, in addition to other preparatory work on the case, consulted with Wilson on at least six occasions for periods of at least thirty minutes on each occasion. At first Wilson stated to the attorney that he was innocent and named several persons who might be of assistance at his trial. However, he subsequently indicated his desire to plead guilty. The attorney declined to enter such a plea on his behalf because he had asserted his innocence. Thereafter Wilson confessed to the attorney that he had not told him the truth and that he was in fact guilty

of the offenses. In the course of this discussion Wilson proceeded to provide many details about the commission of the offenses. After receiving these revelations the attorney agreed to enter a plea of guilty on Wilson's behalf, and Wilson signed an affidavit authorizing the entry of a guilty plea.

■ During the course of the discussions, Wilson was promised nothing; he was threatened with nothing. He was told of all the sentencing alternatives that would be available in the event he should be convicted by a jury, including the possibility of the imposition of a sentence of death, and he was further advised that the acceptance of a plea of guilty would result in a sentence of life imprisonment; however, no representations were made, expressly or impliedly, that a death sentence would likely result if Wilson failed to plead guilty, nor were any representations made to the effect that community sentiment at the time was unusually vindictive. Wilson was further advised that a continuance could be obtained for as long a time as would be necessary to prepare for a defense of the case if he elected to plead not guilty. As noted above, the discussion about a possible guilty plea was initiated by Wilson rather than his attorney. Under all the circumstances Wilson made what must be regarded as a rational and understanding election to plead guilty and accept a life sentence in consequence.

---

6. "A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered." Brady v. United States, *supra*, 397 U.S. at 757, 90 S.Ct. at 1473.

For our purposes here the discussion is limited to the case of a defendant against whom a legitimate prosecution is brought in good faith (*see* Brady v. United States, 397 U.S. n. 8 at 751, 90 S.Ct. n. 8 at 1463) and who has admitted his

guilt to the offense charged. The propriety of accepting a plea of guilty from a defendant who contemporaneously asserts his innocence may be subject to additional considerations. *See* Alford v. North Carolina, 405 F.2d 340 (4th Cir. 1968), probable jurisdiction noted 394 U.S. 956, 89 S.Ct. 1306, 22 L.Ed. 2d 558 (1969), restored to calendar for reargument 397 U.S. 1060, 90 S.Ct. 1494, 25 L.Ed.2d 682, and *see* the Court's statement in Brady v. United States, *supra*, at 1474:

"We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves."

Under the decisions in *Brady* and *Parker* he may not now withdraw that election simply because it now appears that, because of subsequent developments in the law, the maximum lawful sentence that he faced was less than that reasonably contemplated at the time he made his decision. The fact that his decision was influenced by a desire to avoid the apparent possibility of the death penalty does not, of itself, invalidate the plea or the conviction entered upon it.

Accordingly, a certificate of probable cause to appeal is denied, and the appeal is dismissed.